FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

2016 SEP 30   PM 3: 43

| | |
|---|---|
| LAWRENCE E. SCHWANKE, DC, d/b/a BACK TO BASICS FAMILY CHIROPRACTIC, a Florida resident, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| JB MEDICAL MANAGEMENT SOLUTIONS, INC., McKESSON CORPORATION, McKESSON BUSINESS PERFORMANCE SERVICES, McKESSON TECHNOLOGY SOLUTIONS, McKESSON PROVIDER TECHNOLOGIES, McKESSON TECHNOLOGIES, INC., and JOHN DOES 1-12 | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Case No. 5:16-cv-597-oc-30 PRL

## CLASS ACTION COMPLAINT

Plaintiff, Lawrence E. Schwanke, DC, d/b/a Back to Basics Family Chiropractic ("Back to Basics" or "Plaintiff"), brings this action on behalf of himself and all other persons similarly situated and, except for those allegations pertaining to Plaintiff or its attorneys, which are based upon personal knowledge, alleges the following upon information and belief against defendants JB Medical Management Solutions, Inc. ("JB Medical"), McKesson Corporation, McKesson Business Performance Services, McKesson Technology Solutions, McKesson Provider Technologies, and McKesson Technologies, Inc. (collectively "McKesson"), and John Does 1-12 (collectively "Defendants"):

## PRELIMINARY STATEMENT

1.    Defendants have sent advertisements by facsimile in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the regulations the Federal Communications Commission ("FCC") has prescribed thereunder, 47 C.F.R. § 64.1200 (collectively, the "TCPA").

2.    Defendants sent Plaintiff at least one advertisement by facsimile in violation of the TCPA. Exhibit A. Defendants did not obtain Plaintiff's express invitation or permission to send advertisements by fax and Exhibit A lacks a compliant opt-out notice.

3.    Plaintiff brings this action on behalf of himself and a class including all other similarly-situated persons, and against Defendants, seeking statutory damages for each violation of the TCPA, trebling of the statutory damages, injunctive relief, compensation and attorney fees (under the conversion count), and all other relief the Court deems appropriate under the circumstances.

4.    Unsolicited faxes cause damage to their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. Unsolicited faxes tie up the telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message. Moreover, a junk fax interrupts the recipient's privacy. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else.

2

5.    The TCPA prohibits the use of "any telephone facsimile machine, computer or other device to send, to a facsimile machine, an unsolicited advertisement...." 47 U.S.C. § 227 (b)(1)(C). The TCPA defines an "unsolicited advertisement" as "**any** material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission...." *Id.*, § 227 (a)(5) (emphasis added).

6.    Here, Plaintiff received a fax advertising McKesson's Medisoft practice management and electronic health record software. <u>Exhibit A.</u>

7.    That fax also advertised JB Medical's sale and support of McKesson's Medisoft software. <u>Exhibit A.</u>

<u>PARTIES, JURISDICTION, AND VENUE</u>

8.    Plaintiff is a Florida resident and a doctor of chiropractic doing business in Marion County, Florida.

9.    On information and belief, defendant JB Medical Management Solutions, Inc. is a California corporation with its principal place of business in Temecula, California.

10.    On information and belief, the McKesson defendants are Delaware corporations.

11.    On information and belief, McKesson Corporation has its principal place of business in San Francisco, California.

12.    On information and belief, McKesson Technologies Inc. has its

principal place of business in Alpharetta, Georgia.

13.     On information and belief, McKesson Business Performance Services, McKesson Provider Technologies, and McKesson Technology Solutions are divisions of McKesson Corporation.

14.     John Doe Defendants 1-12 are persons not yet known to Plaintiff that actively participated in the transmission of fax advertisements to the class, or benefitted from those transmissions.

15.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

16.     General personal jurisdiction exists over the McKesson Defendants in Florida because McKesson extensively does business, markets, and provides products to healthcare providers, pharmacies, and hospitals throughout the State of Florida.

17.     Specific personal jurisdiction exists over JB Medical in Florida because it has transacted business and committed tortious acts within the State.

18.     Venue is proper in the Middle District of Florida because Defendants committed statutory torts within this District and a significant portion of the events took place here.

<u>FACTS</u>

19.     McKesson created and developed the Medisoft software product.

20.     McKesson marketed its Medisoft product to small and mid-sized provider and physician offices due to its ease of use.

4

21.     JB Medical sells and provides support for Medisoft as part of its billing and practice management services.

22.     Defendants sent advertisements by facsimile to Plaintiff and a class of similarly-situated persons. Whether Defendants did so directly or with the assistance of one or more third parties (yet unknown to Plaintiff), Defendants are directly liable for violating the TCPA.

23.     Plaintiff received at least one of Defendants' advertisements by facsimile. A true and correct copy of the fax Plaintiff received on October 4, 2012 is attached as <u>Exhibit A</u>. Plaintiff intends to discover the number of other Defendants' advertisements sent to Plaintiff by fax.

24.     <u>Exhibit A</u> advertised McKesson's Medisoft product.

25.     <u>Exhibit A</u> advertised McKesson's name and motto, "Empowering Healthcare."

26.     <u>Exhibit A</u> advertised the commercial availability and quality of the Medisoft software by describing its "New Features."

27.     <u>Exhibit A</u> advertised Medisoft version 18 as a way to "Work Smarter, Not Harder."

28.     <u>Exhibit A</u> advertised JB Medical's sales and support of Medisoft.

29.     <u>Exhibit A</u> includes JB Medical's name, address, telephone number, website, and logo.

30.     <u>Exhibit A</u> instructed the recipients to "Call Now and Save 20%!"

31.     <u>Exhibit A</u> promoted enrollment in the Electronic Prescriptions

program until April 2013.

32.     Exhibit A does not include the mandatory opt-out notice required by the TCPA. *See* 47 U.S.C. § 227 (b) (2) (D) & (E) and 47 C.F.R. § 64.1200 (a) (4) (iii) & (v).

33.     Plaintiff did not expressly invite or permit anyone to send Exhibit A or any other advertisement from JB Medical or McKesson to Plaintiff's fax machine.

34.     On information and belief, Defendants sent unsolicited advertisements by facsimile to Plaintiff and more than 39 other persons in violation of the TCPA.

35.     Plaintiff and the other class members owe no obligation to protect their fax machines from Defendants. Their fax machines are ready to send and receive their urgent communications, or private communications about patients' medical needs, not to receive Defendants' unlawful advertisements.

## CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action as a class action on behalf of himself and all others similarly situated as members of a class, initially defined as follows:

> Every person sent one or more facsimiles from JB Medical at any time after September 29, 2012, about "Medisoft" and which did not state that the fax recipient could request that the sender not send any future fax and that the failure to comply with such a request within 30 days would be unlawful.

Plaintiff expressly reserves the right to modify the proposed class definition or propose subclasses.

37.     Excluded from the class are Defendants, any entity in which Defendants have a controlling interest, each of Defendants' officers, directors, legal representatives, heirs, successors, and assigns, and any Judge assigned to this

action, including his or her immediate family.

38. On information and belief, Defendants' fax advertising campaigns involved other, substantially-similar advertisements also sent without the opt-out notice required by the TCPA. Plaintiff intends to locate those advertisements in discovery. Exhibit B, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

39. This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies Rule 23 (a)'s numerosity, commonality, typicality, and adequacy requirements. Additionally, prosecution of Plaintiff's claims separately from the putative class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

40. **Numerosity/impracticality of joinder.** On information and belief, the class consists of more than 39 persons and, thus, is so numerous that individual joinder of each member is impracticable. The precise number of class members and their identities are unknown to Plaintiff, but will be obtained from Defendants' records or the records of third parties.

41. **Commonality and predominance.** There is a well-defined community of interest and common questions of law and fact that predominate over any questions affecting only individual members of the class. These common legal and factual

questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

a.      Whether Defendants sent facsimiles promoting the commercial availability or quality of property, goods, or services;

b.      Whether Exhibit A, and other yet-to-be-discovered facsimiles sent by or on behalf of Defendants, advertised the commercial availability or quality of property, goods or services;

c.      The manner and method Defendants used to compile or obtain the list(s) of fax numbers to which they sent advertisements by fax;

d.      Whether Defendants' fax advertisements contained the opt-out notices required by the TCPA;

e.      Whether the Court should award statutory damages to Plaintiff and the other class members;

f.      Whether, if the Court finds that Defendant(s) willfully or knowingly violated the TCPA, the Court should exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than three times the amount;

g.      Whether the Court should enjoin Defendants from faxing advertisements in the future; and

h.      Whether Defendants' conduct as alleged herein constituted conversion.

42.    <u>Typicality of claims.</u> Plaintiff's claims are typical of the claims of the other class members, because Plaintiff and all class members were injured by the same wrongful practices. Plaintiff and the members of the class received Defendants' advertisements by facsimile and those advertisements did not contain the opt-out notice required by the TCPA. Under the facts of this case, because the focus is upon Defendants' conduct, if Plaintiff prevails on its claims, then the other putative class members will prevail as well.

43.    <u>Adequacy of representation.</u> Plaintiff is an adequate representative of the class because its interests do not conflict with the interests of the class it seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and TCPA litigation in particular, and Plaintiff intends to vigorously prosecute this action. Plaintiff and its counsel will fairly and adequately protect the interest of members of the class.

44.    <u>Prosecution of separate claims would yield inconsistent results.</u> Even though the questions of fact and law in this action are predominantly common to Plaintiff and the putative class members, separate adjudication of each class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for Defendants to operate under if/when class members bring additional lawsuits concerning the same unsolicited fax advertisements of if Defendants choose to advertise by fax again in the future.

45.    <u>A class action is the superior method of adjudicating the common</u>

<u>questions of law or fact that predominate over individual questions.</u> A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

COUNT I
<u>TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227</u>

46.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

47.    Plaintiff brings Count I on behalf of himself and a class of similarly-situated persons.

48.    The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine...." 47 U.S.C. § 227 (b) (1).

49.    The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227 (a) (4).

50.    <u>Exhibit A</u> advertises the commercial availability or quality of McKesson's Medisoft software by, *inter alia*, inviting the recipient to "Work Smarter not Harder" and describing the features of the program.

10

51.    <u>Exhibit A</u> provides JB Medical's telephone number, address, and website so that recipients may contact JB Medical to purchase the Medisoft software.

52.    Defendants sent <u>Exhibit A</u> to Plaintiff and others offering a chance to "Call Now and Save 20%!"

53.    The TCPA provides a private right of action as follows:

> 3.    <u>Private right of action</u>. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
> (A)    An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B)    An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C)    Both such actions.

47 U.S.C. § 227 (b) (3).

54.    The Court, in its discretion, may treble the statutory damages if it determines that a violation was knowing or willful. 47 U.S.C. § 227 (b) (3).

55.    The TCPA requires that every advertisement sent by facsimile must include an opt-out notice clearly and conspicuously displayed on the bottom of its first page. 47 U.S.C. § 227 (b) (2) (D) and (E); 47 C.F.R. § 64.1200 (a) (4).

56.    Defendants failed to include a clear and conspicuous opt-out notice on <u>Exhibit A</u>.

57.    Defendants' "to be removed" verbiage is the smallest font on the page

and dwarfed by the advertising on the fax, such as "Medisoft V 18 Is here!" and

"Call Now and Save 20%!"

58.    The TCPA expressly mandates the form and content of an opt-out

notice. 47 U.S.C. § 227 (b) (2) (D) & (E), in relevant part, states:

> In implementing the requirements of this subsection, the Commission
> ...
>
> (D) shall provide that a notice contained in an unsolicited
> advertisement complies with the requirements under this
> subparagraph only if...
>
> (i) the notice is clear and conspicuous and on the first page of the
> unsolicited advertisement;
>
> (ii) the notice states that the recipient may make a request to the
> sender of the unsolicited advertisement not to send any future
> unsolicited advertisements to a telephone facsimile machine or
> machines and that failure to comply, within the shortest reasonable
> time, as determined by the Commission, with such a request meeting
> the requirements under subparagraph (E) is unlawful;
>
> (iii) the notice sets forth the requirements for a request under
> subparagraph (E);
>
> (iv) the notice includes—
>
>> (I) a domestic contact telephone and facsimile machine
>> number for the recipient to transmit such a request to the
>> sender; and
>>
>> (II) a cost-free mechanism for a recipient to transmit a
>> request pursuant to such notice to the sender of the
>> unsolicited advertisement; the Commission shall by rule require
>> the sender to provide such a mechanism and may, in the
>> discretion of the Commission and subject to such conditions as
>> the Commission may prescribe, exempt certain classes of small
>> business senders, but only if the Commission determines that
>> the costs to such class are unduly burdensome given the
>> revenues generated by such small businesses;

(v) the telephone and facsimile machine numbers and the cost-free mechanism set forth pursuant to clause (iv) permit an individual or business to make such a request at any time on any day of the week; and

(vi) the notice complies with the requirements of subsection (d) of this section;

(E) shall provide, by rule, that a request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if—

(i) the request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates;

(ii) the request is made to the telephone or facsimile number of the sender of such an unsolicited advertisement provided pursuant to subparagraph (D)(iv) or by any other method of communication as determined by the Commission; and

(iii) the person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine;

59.     The FCC's regulations at 47 C.F.R. § 64.1200 (a) (4) (iii) & (v) expressly require the following:

(iii) The advertisement contains a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements. A notice contained in an advertisement complies with the requirements under this paragraph only if -

(A) The notice is clear and conspicuous and on the first page of the advertisement;

(B) The notice states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph (a)(4)(v) of this section is unlawful;

(C) The notice sets forth the requirements for an opt-out request under paragraph (a)(4)(v) of this section;

(D) The notice includes -

(1) A domestic contact telephone number and facsimile machine number for the recipient to transmit such a request to the sender; and

(2) If neither the required telephone number nor facsimile machine number is a toll-free number, a separate cost-free mechanism including a Web site address or email address, for a recipient to transmit a request pursuant to such notice to the sender of the advertisement. A local telephone number also shall constitute a cost-free mechanism so long as recipients are local and will not incur any long distance or other separate charges for calls made to such number; and

(E) The telephone and facsimile numbers and cost-free mechanism identified in the notice must permit an individual or business to make an opt-out request 24 hours a day, 7 days a week.

...

(v) A request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if -

(A) The request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates;

(B) The request is made to the telephone number, facsimile number, Web site address or email address identified in the sender's facsimile advertisement; and

(C) The person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine.

60.     Facsimile advertising imposes burdens on recipients that are distinct from the burdens imposed by other types of advertising. The required opt-out notice

provides recipients the necessary information to opt-out of future fax transmissions, including a notice that the sender's failure to comply with the opt-out request will be unlawful. 47 C.F.R. § 64.1200 (a) (4).

61. Exhibit A does not provide any of the information the TCPA requires for a compliant opt-out notice. For example, Exhibit A fails to state that the recipient may make a request to the sender not to send any future advertisement by facsimile and that the sender's failure to comply within 30 days is unlawful.

62. Defendants failed to include a compliant opt-out notice on Exhibit A. Defendants failed to include a toll free fax number.

63. Exhibit A fails to set forth the requirements for Plaintiff or any member of the putative class to properly request an opt-out as explained by 47 C.F.R. § 64.1200 (a) (4) (v). Specifically, the fax does not inform Plaintiff and other putative class members that they must identify the telephone number(s) of the telephone facsimile machine(s) to which the opt-out request relates. Additionally, the fax fails to inform Plaintiff and the putative class that a request must be made to the telephone number, facsimile number, Web site address or email address identified in the sender's facsimile advertisement. Finally, the faxes fail to inform Plaintiff and the putative class that the person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine.

64. Defendants' failure to include a compliant opt-out notice on their fax

15

advertisements makes irrelevant any established business relationship ("EBR") that otherwise might have justified Defendants' fax advertising. 47 C.F.R. § 64.1200 (a) (4).

65.    Express consent to fax is an affirmative defense Defendants must plead and prove, but their failure to include a compliant opt-out notice on their fax advertisements makes irrelevant any prior express invitation or permission that otherwise might have justified fax advertising. 47 C.F.R. § 64.1200 (a).

66.    The TCPA is a strict liability statute and Defendants are liable to Plaintiff and the other class members even if their actions were negligent. 47 U.S.C. § 227 (b) (3).

67.    Even if Defendants did not intend to injure Plaintiff and the other class members, did not intend to violate their privacy, and did not intend to waste their valuable time with Defendants' advertisements, those facts are irrelevant because the TCPA is a strict liability statute.

68.    If Defendants' actions were knowing or purposeful, then the Court has the discretion to increase the statutory damages up to three times the amount. 47 U.S.C. § 227 (b) (3).

69.    JB Medical is liable for the fax advertisement at issue because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, the faxes were sent on its behalf, or under general principles of vicarious liability, including actual authority, apparent authority and ratification; and the fax promoted the quality or commercial availability of JB

16

Medical's software sales and support services.

70. McKesson is liable for the fax advertisement at issue because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, the faxes were sent on its behalf, or under general principles of vicarious liability, including actual authority, apparent authority and ratification; and the fax promoted the quality or commercial availability of McKesson's Medisoft program.

71. JB Medical benefitted from the sending of the faxes in that it increased awareness of JB Medical's software sales and support services.

72. McKesson benefitted from the sending of the faxes in that it increased awareness of the new features and benefits of McKesson's Medisoft software.

73. Defendants knew or should have known that Plaintiff and the other class members had not given express invitation or permission for Defendants or anybody else to fax advertisements about Defendants' goods, products, or services, that Plaintiff and the other class members did not have an established business relationship with Defendants, that Exhibit A is an advertisement, and that Exhibit A did not display a compliant opt-out notice as required by the TCPA.

74. Defendants' actions damaged Plaintiff and the other class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes. Moreover, the subject faxes used the fax machines of Plaintiff and the other class members. The subject faxes cost Plaintiff time, as Plaintiff and its employees wasted their time receiving, reviewing

17

and routing Defendants' illegal faxes. That time otherwise would have been spent on Plaintiff's business activities. Defendants' faxes unlawfully interrupted Plaintiff and the other class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other class members from the sending of unlawful fax advertisements occurred outside Defendants' premises.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally, as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award $500.00 in statutory damages for each violation of the TCPA;

C.     That, if it finds Defendant(s) willfully or knowingly violated the TCPA's faxing prohibitions, the Court exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than three times the amount (Plaintiff requests trebling);

D.     That the Court enter an injunction prohibiting Defendants from violating the TCPA; and

E.     That the Court award costs and such further relief as the Court may deem just and proper.

## COUNT II
## COMMON LAW CONVERSION

75.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

76.     Plaintiff brings Count II on behalf of himself and a class of similarly-situated persons.

77.     By sending advertisements to their fax machines, Defendants improperly and unlawfully converted the class's fax machines to Defendants' use. Where printed (as in Plaintiff's case), Defendants also improperly and unlawfully converted the class members' paper and toner to Defendants' own use. Defendants also converted Plaintiff's time to Defendants' own use, as they did with the valuable time of the other class members.

78.     Immediately prior to the sending of the unsolicited faxes, Plaintiff and the other class members each owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

79.     By sending them unsolicited faxes, Defendants permanently misappropriated the class members' fax machines, toner, paper, and employee time to their own use. Such misappropriation was wrongful and without authorization.

80.     Defendants knew or should have known that the misappropriation of paper, toner, and employee time was wrongful and without authorization.

81.     Plaintiff and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a

result of their receipt of unsolicited fax advertisements from Defendants.

82.    Defendants' unsolicited faxes effectively stole the time of Plaintiff and the other class members by forcing them to receive and review unlawful advertising. Defendants knew or should have known that time is valuable to Plaintiff and the other class members.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally, as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.    That the Court award appropriate damages;

C.    That the Court award punitive damages;

D.    That the Court award attorney's fees;

E.    That the Court award costs of suit; and

F.    That the Court award such further relief as it may deem just and proper under the circumstances.

Respectfully submitted,

LAWRENCE E. SCHWANKE, DC, d/b/a
BACK TO BASICS FAMILY
CHIROPRACTIC, a Florida resident,
individually and as the representative of a
class of similarly-situated persons,

By: /s/ Phillip A. Bock

Phillip A. Bock
Fla. Bar No. 93895
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602

P.O. Box 416474
Miami Beach, FL 33141
Telephone: 312-658-5500
Facsimile: 312-658-5555

# EXHIBIT A

10-04-2012 12:07          951-676-4972          3523690163          D 1/1

# Medisoft V18 Is here!

## Work Smarter, Not Harder

### NEW FEATURES:

- Electronic Prescriptions*
- Credit Card processing
- BillFlash Electronic Patient Statement interfaces
- Post ERA files in seconds
- And many more...

## Call Now and Save 20%!

*(For Medisoft Advanced and Net Pro only. Free enrollment in electronic prescriptions until April 2013)



JB Medical
27464 Commerce Center Dr.
Suite C
Temecula, CA 92590
Toll Free: 877-787-8686
Fax 951-676-4972
www.SeeMorePatients.com

**877-787-8686**

**MCKESSON**
*Empowering Healthcare*

**medisoft™**

*To be removed from this list, please dial (800)841-3020, x59830, or you may fax this to (951)676-4972 with the fax number to be removed.

BacktoBasics000716

# EXHIBIT B

# BOCK, HATCH, LEWIS & OPPENHEIM, LLC

134 North La Salle Street, Suite 1000

Chicago, IL 60602

312-658-5500 (Phone) • 312-658-5555 (Fax)

**September 30, 2016**

In re: *Lawrence E. Schwanke, DC, d/b/a Back to Basics Family Chiropractic v. JB Medical Management Solutions, Inc., McKesson Corporation, et al.* (MDFL).

### Demand for Preservation of All Tangible Documents Including Electronically Stored Information

As part of the Class Action Complaint against JB Medical Management Solutions, Inc., McKesson Corporation, et al., plaintiff, Lawrence E. Schwanke, DC, d/b/a Back to Basics Family Chiropractic. ("Plaintiff"), hereby issues a demand for Defendants to preserve all tangible documents, including electronically stored information.

As used in this document, "you" and "your" refers to Defendants, and its predecessors, successors, parents, subsidiaries, divisions or affiliates, and their respective officers, directors, agents, attorneys, accountants, employees, partners or other persons occupying similar positions or performing similar functions.

You should anticipate that much of the information subject to disclosure or responsive to discovery in this matter is stored on your current and former computer systems and other media and devices (including personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information (hereinafter "ESI") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically or optically stored as:

• Digital communications (e.g., e-mail, voice mail, instant messaging);
• Word processed documents (e.g., Word or WordPerfect documents and drafts);
• Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
• Accounting Application Data (e.g., QuickBooks, Money, Peachtree data files);
• Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
• Sound Recordings (e.g., .WAV and .MP3 files);
• Video and Animation (e.g., .AVI and .MOV files);

1

- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations)
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Computer Aided Design/Drawing Files; and,
- Back Up and Archival Files (e.g., Zip, .GHO)

ESI resides not only in areas of electronic, magnetic and optical storage media reasonably accessible to you, but also in areas you may deem not reasonably accessible. You are obliged to preserve potentially relevant evidence from both these sources of ESI, even if you do not anticipate producing such ESI.

The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary. Pursuant to amendments to the Federal Rules of Civil Procedure that have been approved by the United States Supreme Court (eff. 12/1/05), you must identify all sources of ESI you decline to produce and demonstrate to the court why such sources are not reasonably accessible. For good cause shown, the court may then order production of the ESI, even if it finds that it is not reasonably accessible. Accordingly, even ESI that you deem reasonably inaccessible must be preserved in the interim so as not to deprive the plaintiffs of their right to secure the evidence or the Court of its right to adjudicate the issue.

### A.    Preservation Requires Immediate Intervention

You must act immediately to preserve potentially relevant ESI regarding the time period of January 2012 to the date You receive this letter. Potentially relevant ESI includes, but is not limited to information:

1. Regarding the events and causes of action described in Plaintiff's Class Action Complaint; and
2. Regarding Your claims or defenses to Plaintiff's Class Action Complaint.

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI. Be advised that sources of ESI are altered and erased by continued use of your computers and other devices. Booting a drive, examining its contents or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI. Nothing in this

2

demand for preservation of ESI should be understood to diminish your concurrent obligation to preserve document, tangible things and other potentially relevant evidence.

## B.    Suspension of Routine Destruction

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

• Purging the contents of e-mail repositories by age, capacity or other criteria;
• Using data or media wiping, disposal, erasure or encryption utilities or devices;
• Overwriting, erasing, destroying or discarding back up media;
• Re-assigning, re-imaging or disposing of systems, servers, devices or media;
• Running antivirus or other programs effecting wholesale metadata alteration;
• Releasing or purging online storage repositories;
• Using metadata stripper utilities;
• Disabling server or IM logging; and,
• Executing drive or file defragmentation or compression programs.

## C.    Guard Against Deletion

You should anticipate that your employees, officers or others may seek to hide, destroy or alter ESI and act to prevent or guard against such actions. Especially where company machines have been used for Internet access or personal communications, you should anticipate that users may seek to delete or destroy information they regard as personal, confidential or embarrassing and, in so doing, may also delete or destroy potentially relevant ESI. This concern is not one unique to you or your employees and officers. It's simply an event that occurs with such regularity in electronic discovery efforts that any custodian of ESI and their counsel are obliged to anticipate and guard against its occurrence.

## D.    Preservation by Imaging

You should take affirmative steps to prevent anyone with access to your data, systems and archives from seeking to modify, destroy or hide electronic evidence on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, steganography or the like). With respect to local hard drives, one way to protect existing data on local

3

hard drives is by the creation and authentication of a forensically qualified image of all sectors of the drive. Such a forensically qualified duplicate may also be called a bitstream image or clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to preserve forensically significant data that may exist in such areas as unallocated space, slack space and the swap file.

With respect to the hard drives and storage devices of each of the persons named below and of each person acting in the capacity or holding the job title named below, as well as each other person likely to have information pertaining to the instant action on their computer hard drive(s), demand is made that you immediately obtain, authenticate and preserve forensically qualified images of the hard drives in any computer system (including portable and home computers) used by that person during the period from August 2012 to today's date as well as recording and preserving the system time and date of each such computer.

Once obtained, each such forensically qualified image should be labeled to identify the date of acquisition, the person or entity acquiring the image and the system and medium from which it was obtained. Each such image should be preserved without alteration.

### E.    Preservation in Native Form

You should anticipate that certain ESI, including but not limited to spreadsheets and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, you should preserve ESI in such native forms, and you should not select methods to preserve ESI that remove or degrade the ability to search your ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in the litigation. You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

### F.    Metadata

You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and

4

printing. Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

### G.     Servers

With respect to servers like those used to manage electronic mail (e.g., Microsoft Exchange, Lotus Domino) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved. There are several ways to preserve the contents of a server depending upon, e.g., its RAID configuration and whether it can be downed or must be online 24/7. If you question whether the preservation method you pursue is one that we will accept as sufficient, please call to discuss it.

### H.     Home Systems, Laptops, Online Accounts and Other ESI Venues

Though we expect that you will act swiftly to preserve data on office workstations and servers, you should also determine if any home or portable systems may contain potentially relevant data. To the extent that officers, board members or employees have sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, you must preserve the contents of systems, devices and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from portable thumb drives, CD-R disks and the user's PDA, smart phone, voice mailbox or other forms of ESI storage.). Similarly, if employees, officers or board members used online or browser-based email accounts or services (such as AOL, Gmail, Yahoo Mail or the like) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted and Archived Message folders) should be preserved.

### I.     Ancillary Preservation

You must preserve documents and other tangible items that may be required to access, interpret or search potentially relevant ESI, including logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters or the like.

You must preserve any passwords, keys or other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals and license keys for applications required to access the ESI. You must preserve any cabling, drivers and hardware, other than a standard 3.5" floppy disk drive or standard CD or DVD optical disk drive, if needed to access

or interpret media on which ESI is stored. This includes tape drives, bar code readers, Zip drives and other legacy or proprietary devices.

### J.     Paper Preservation of ESI is Inadequate

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both forms.

### K.     Agents, Attorneys and Third Parties

Your preservation obligation extends beyond ESI in your care, possession or custody and includes ESI in the custody of others that is subject to your direction or control. Accordingly, you must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your obligation to do so, and you must take reasonable steps to secure their compliance.

### L.     System Sequestration or Forensically Sound Imaging

We suggest that, with respect to Defendants removing their ESI systems, media and devices from service and properly sequestering and protecting them may be an appropriate and cost-effective preservation step. In the event you deem it impractical to sequester systems, media and devices, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems, media and devices is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods poses a significant threat of spoliation and data loss.

By "forensically sound," we mean duplication, for purposes of preservation, of all data stored on the evidence media while employing a proper chain of custody and using tools and methods that make no changes to the evidence and support authentication of the duplicate as a true and complete bit-for-bit image of the original. A forensically sound preservation method guards against changes to metadata evidence and preserves all parts of the electronic evidence, including the so-called "unallocated clusters," holding deleted files.

### M.     Preservation Protocols

We are desirous of working with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol,

if you will furnish an inventory of the systems and media to be preserved. Else, if you will promptly disclose the preservation protocol you intend to employ, perhaps we can identify any points of disagreement and resolve them. A successful and compliant ESI preservation effort requires expertise. If you do not currently have such expertise at your disposal, we urge you to engage the services of an expert in electronic evidence and computer forensics. Perhaps our respective expert(s) can work cooperatively to secure a balance between evidence preservation and burden that's fair to both sides and acceptable to the Court.

### N.     Do Not Delay Preservation

I'm available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay. Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay in production of evidence to which we are entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek sanctions.

### O.     Confirmation of Compliance

Please confirm that you have taken the steps outlined in this letter to preserve ESI and tangible documents potentially relevant to this action. If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.


Respectfully,



Phillip A. Bock
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. LaSalle St., Suite 1000
Chicago, IL 60602
312-658-5500
phil@classlawyers.com