## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**LAWRENCE E. SCHWANKE, DC, a
Florida resident, individually and as the
representative of a class of similarly-
situated persons**

       **Plaintiff,**

**v.**                                                        **Case No: 5:16-cv-597-Oc-30PRL**

**JB MEDICAL MANAGEMENT
SOLUTIONS, INC., MCKESSON
CORPORATION and JOHN DOES 1-12**

       **Defendants.**

---

### ORDER

Before the Court are two discovery disputes.   Plaintiff seeks an order directing Defendant JB Medical Management Solutions, Inc. to comply with his subpoena decus tecum.   (Doc. 67). Defendant McKesson Corporation, in turn, seeks to limit the scope of that subpoena.   (Doc. 68). Plaintiff has also served a third-party subpoena, and McKesson seeks to limit the scope of that subpoena too.   (Doc. 59).

### I.   BACKGROUND

As further explained below, Plaintiff asserts the he received an unsolicited facsimile on October 4, 2012.   He claims that Defendants, who sent the fax (or at least benefited from it) violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, as the fax was uninvited and lacked a mandatory opt-out notice; he also brings a state-law conversion claim based on the same facts.

### A.  The Parties and the Facsimile at Issue

Plaintiff is a chiropractor in Marion County.  (Doc. 1 at ¶8).  On October 4, 2012, he received an alleged unsolicited fax advertising certain software called "Medisoft."[1]  (Doc. 1 at ¶¶19, 23; Doc. 1 at p.23).  Medisoft software is apparently marketed to small and mid-sized medical providers and physicians.  (Doc. 1 at ¶20).

JB Medical Solutions, Inc., located in California, purportedly sent the fax.  (Docs. 1 at ¶¶9, 21, 36; 39 at 6).  The fax contains the name and motto of McKesson Corporation ("McKesson").  (Doc. 1 at ¶25).  McKesson is a complexly organized firm (Doc. 39 at 2 & n.2), but it appears that one of its entities, McKesson Technologies, Inc., sold and serviced the Medisoft product at the time the October fax was sent.[2]  (Docs. 60 at 3; 60-4 at 5; 63 at 3–4).

Plaintiff asserts this action on behalf of himself and others and defines the class he seeks to represent as follows:

> Every person sent one or more facsimiles from JB Medical at any time after September 29, 2012, about "Medisoft" and which did not state that the fax recipient

---

[1]  As discovery has progressed, Plaintiff has now identified an additional nine faxes that he received during the time period at issue, faxes that are purportedly relevant to his claims.  (*See infra* note 7; Docs. 61-1; 70 at 2).

[2]  Earlier this year, McKesson sought to transfer this case "to the District Court for the Northern District of California because it substantially overlaps with a case that was filed there first, or because transferring would further the interests of convenience and justice."  (Doc. 39 at 1–2).  McKesson also sought to dismiss the claims against four of the five McKesson entities named in the Complaint—McKesson Business Performance Services, McKesson Technology Solutions, McKesson Provider Technologies, and McKesson Technologies, Inc.  The Court declined to transfer the action, but "conclude[d] that Plaintiff's complaint fails to state a cause of action against all but one of the McKesson Defendants and must be dismissed as to the other defendants."  (Doc. 39 at 2).  In doing so, the Court tolled the statutes of limitations for both the TCPA claim and the conversion claim until June 9, 2017 to allow Plaintiff to "conduct discovery to determine whether any other McKesson Defendants are proper defendants to this action, at which time the Court will consider any appropriate motion from Plaintiff."  (Doc. 39 at 11).

On June 9 Plaintiff then moved to add two additional defendants (including McKesson Technologies, Inc.) and requested a further tolling of statute of limitations to continue discovery into other potential defendants.  (Doc. 60).  The Court, however, denied that motion without prejudice under Local Rule 3.01(g).  (Doc. 64).

could request that the sender not send any future fax and that the failure to comply
with such a request within 30 days would be unlawful.

(Doc. 1 at ¶36).  He bases this proposed class on the belief that "Defendants' fax advertising
campaigns involved other, substantially-similar advertisements also sent without the opt-out notice
required by the TCPA" and "intends to locate those advertisements in discovery."   (Doc. 1 at ¶38).

Notably, to date JB Medical has not appeared.   Plaintiff and McKesson, however, have
already litigated several disputes in this action.   (*See* Docs. 39, 58, 64).   And it is Plaintiff and
McKesson who are litigating the current two discovery disputes, laid out below, that are now
before the Court.

### B.  The Discovery Dispute as to JB Medical

Earlier this year, Plaintiff served JB Medical with a subpoena decus tecum.   (Doc. 67 at
27–32).   Despite service, JB Medical has not responded to the subpoena.   (Doc. 67 at 2).
Plaintiff then filed an action in a California Court to force JB Medical to comply with the subpoena,
that action was then transferred back to this District, and finally the pertinent motion was
transferred to this case.[3]   (*See* Docs. 62, 66).

In his motion, Plaintiff asks the Court to order JB Medical to comply with fifty-one
document requests.   (Doc. 67 at 33–37).   It is undisputed that JB Medical was properly served
with the subpoena and that JB Medical has failed to respond to Plaintiff's motion to compel
compliance.   But Defendant McKesson has responded in opposition to certain document requests
in the subpoena and has, in the same filing, moved the Court for an order limiting that subpoena.
(Doc. 68).

---

[3] The filings located at Docs. 68 and 69 were also transferred in from California and then
transferred to this case.   *See Schwanke v. JB Medical Management Solutions, Inc., et al*, 5:17-mc-00006-
WTH-PRL, at Docs. 12, 13, 14, 17, 19, 20).

In sum, McKesson asserts that Plaintiff seeks wholly irrelevant documents in three of its requests and that ten other requests should be limited in their scope.   (Doc. 68 at 9).   To explain, in Requests 15, 36, and 37 of the JB Medical subpoena, Plaintiff seeks, respectively, "Each document identifying, referring, or relating to McKesson owned products, other than medisoft, that JB Medical sold or distributed from September 30, 2012 to the present;" "Each document relating to the creation of any fax advertisement, other than the subject fax that identified JB Medical and medisoft on it, as alleged in the Complaint;" and "Each document relating to JB Medical sending fax advertisements, not including the subject fax, or any other fax identifying JB Medical and medisoft, to recipients since September 30, 2016."   (Doc. 67 at 34, 35).

According to McKesson, these requests seek information "wholly irrelevant to Plaintiff's TCPA claim and the putative class."   (Doc. 68 at 9).   McKesson's theory is apparently based on Plaintiff's proposed class action definition, which references faxes sent by JB Medical "about Medisoft."   (Doc. 68 at 8).   McKesson concludes that given Plaintiff's own claims, only faxes sent from JB Medical that are "about Medisoft" are relevant here.   (Doc. 68 at 5).

In Requests 9–13 and 16–20 of the JB Medical subpoena, Plaintiff seeks various documents that relate to JB Medical's business relationship with McKesson.   (Doc. 67 at 33–34).   McKesson asked this Court, based on the same theory as above, to limit these requests to only documents that concern the product Medisoft.   (Doc. 68 at 9).

Plaintiff, for his part, has responded in opposition to McKesson's request to limit the scope of the JB Medical subpoena.   (Doc. 69).   Plaintiff raises three arguments in his response.

First, Plaintiff notes that neither JB Medical nor McKesson have objected to Request 1–8, 14, 21–35, and 38–51 of the subpoena served on JB Medical.   (Doc. 69 at 3–4).   Thus Plaintiff concludes that the Court should order JB Medical to comply with these requests.   Second, Plaintiff

asserts that McKesson lacks standing under the applicable federal rules because McKesson has no personal right to, or privilege interest in, the documents he seeks and because McKesson will not suffer any annoyance, embarrassment, oppression, or undue burden or expense if JB Medical complies with the subpoena.   (Doc. 69 at 4–7).

Third, Plaintiff also takes issue with McKesson's characterization of the scope of his claims (i.e., he contends his claims are broader than only faxes "about Medisoft").   (Doc. 69 at 7–9).   In support of his argument, he asserts that his class definition is not limited to only faxes that advertise the product Medisoft; that he reserves the right to amend his class definition; that information obtained in discovery often affects a class's definition; and—lastly—he notes that this Court, in denying McKesson's motion to transfer this case (*see* Doc. 39), focused on the fact that the instant complaint alleges that JB Medical sent the fax at issue and that the related case that is ongoing in California involved an alleged fax sent by McKesson or one of its subsidiaries (i.e., in denying McKesson's motion to transfer, the Court did not focus on the products at issue in comparing the two cases).

As an important aside, there is some evidence before the Court that JB Medical has prepared responses to Plaintiff's subpoena and is awaiting the Court's ruling on the dispute.   (*See* Doc. 69 at 20) ("JB Medical has completed a Response to the Subpoena and signed it with the documents JB Medical had that are responsive to the Subpoena" and "JB Medical intends to submit its Response to the Subpoena promptly after the discovery dispute is resolved by the Court.").[4]

---

[4] This representation is apparently made by William Hayes, Esq., who is counsel to a third party here, WestFax, Inc.   (Doc. 50 at 5).   As noted above, JB Medical has not appeared in this action so it is unclear to the Court if attorney Hayes has authority to make this representation on behalf of JB Medical.

### C.  The Discovery Dispute as to Third Party WestFax, Inc.

As this case has progressed, Plaintiff learned that JB Medical hired a firm named WestFax, Inc. to broadcast bulk faxes on its behalf.   Given this, Plaintiff served WestFax with a third-party subpoena decus tecum.   (Doc. 61-3).   But McKesson opposes this subpoena too.   (Doc. 59).

McKesson submitted objections to Plaintiff and WestFax to several of the document requests sent to WestFax on grounds that such discovery was overbroad and irrelevant.   (Doc. 59-4).   These objections have affected this case, as WestFax's policy is to withhold disputed discovery until the dispute is resolved or a court orders production.   (Doc. 59-5).   In time, Plaintiff and McKesson resolved some of the objections.   (Docs. 59 at 5–6; 70).   An impasse, nevertheless, still exists.

To explain, WestFax apparently sent several separate bulk faxes on JB Medical's behalf. (Doc. 61 at 3–5; 61-2 at 1–3).   Although WestFax lacks copies of the faxes it sent for JB Medical (and does not even know the content of them) (Doc. 61-7 at 1), with each bulk fax JB Medical ordered WestFax appears to have created a "summary invoice," and each summary invoice contains an item description.   (Doc. 61-2 at 1–3).   McKesson maintains that if JB Medical asked WestFax to broadcast faxes about Medisoft, then the word "Medisoft" would logically be in the relevant summary invoice's item description.   (Doc. 59 at 8–9).

Indeed, McKesson asks the Court in a motion for a protective order to limit the WestFax subpoena "to information concerning only faxes that JB Medical sent about the Medisoft product at issue in this case."[5]   (Doc. 59 at 13).   Plaintiff, for his part, asserts several theories as to why WestFax should produce all of its JB Medical summary invoices—from September 29, 2012 to

---

[5] This dispute originally came before the Court on Plaintiff's motion to strike McKesson's objections to the WestFax subpoena, but that motion was denied under Local Rule 3.01(g).   (Docs. 50, 58).

present (a time period McKesson does not dispute)—regardless of whether the word "Medisoft" appears in an invoice's item description (and these arguments would presumably apply to other documents that WestFax may have).[6]

One of Plaintiff's theories is that JB Medical asked WestFax to send numerous faxes that contained advertisements for Medisoft but the relevant summary invoices nevertheless lack any mention of Medisoft—i.e., there is not a direct, reliable correlation between the item descriptions contained in the summary invoices and the subject matter of the pertinent faxes according to Plaintiff.   (Doc. 61 at 54–6).   And Plaintiff has provided evidence to support this theory.

As noted *supra*, it turns out that the October 12, 2012 fax is not the only fax that Plaintiff has received that advertised Medisoft.[7]   (Docs. 61 at 3 ("Plaintiff [has now] identified twelve more faxes that were sent to him that identify JB Medical and Medisoft. Nine of the twelve faxes were sent within the relevant time period of September 30, 2012 to the present.") (citation omitted); 61-1; Doc. 63 at 5).   One of these other faxes was received by Plaintiff on January 9, 2013.   (Doc.

----

[6] Many of these theories mirror the arguments Plaintiff makes in his opposition to McKesson's other motion, the motion directed to the JB Medical subpoena.   (Doc. 68).   For example, Plaintiff opposes McKesson's objections to the WestFax subpoena by arguing that his class action claim relates to all fax advertisements sent by JB Medical irrespective of the particular product advertised (Doc. 61 at 2–3); Plaintiff has received nine unsolicited faxes purportedly sent by JB Medical that advertise Medisoft, but WestFax (to date) has only produced a few relevant summary invoices (Doc. 61 at 3–5); the scope and contour of the class at issue here may evolve (Doc. 61 at 6–8); this Court denied McKesson's motion to transfer on grounds that the instant case involves a fax allegedly sent by JB Medical, whereas the first filed case involves faxes sent by a McKesson entity—i.e., the denial of the transfer had nothing to do with the product advertised (Doc. 61 at 8–9); and McKesson has failed to carry its burden under Rule 26(c) (Doc. 61 at 9–10).

[7] To clarify, Plaintiff has now identified a total of nine faxes that he received during the putative class period in addition to the underlying October 4, 2012 fax.   (Docs. 61 at 3; 61-1).   All nine faxes apparently contain references to JB Medical and Medisoft.   Currently, Plaintiff has received summary invoices from WestFax that have dates correlating with only two of the nine.   (Doc. 61 at 5).   Plaintiff, in his response to McKesson's motion for a protective order as to WestFax, argues that he is entitled to discover into the pertinent documents that WestFax may have for the other seven faxes in his possession. (Doc. 61 at 5).   McKesson has now filed a notice with the Court and has "agreed to withdraw its objections to Westfax's production of documents related to faxes that may have been transmitted on the seven dates Plaintiff allegedly received additional faxes."   (Doc. 70 at 2).

61 at 6).   That fax referenced both Medisoft and JB Medical (but not McKesson).   (Doc. 61-1 at 4–5).

Plaintiff is also in possession of a summary invoice produced by WestFax that shows JB Medical paid WestFax to broadcast six-thousand-and-seven faxes on that same day—January 9, 2013.   (Docs. 61 at 6; 61-2 at 2).   But the item description of that summary invoice makes no mention of Medisoft.

So, according to Plaintiff's theory, and given the above-mentioned evidence, along with WestFax's admission that it does not know the content of the faxes it sends (Doc. 61-17 at 1), all of the JB Medical summary invoices (and perhaps other documents) during the time period at issue are relevant to its class action claims regardless of whether the item descriptions in such invoices mention the word "Medisoft."   (Docs. 61 at 5–6).

## II.   LEGAL STANDARDS

### A.  Motion to Compel

Motions to compel discovery under Rule 37(a) of the Federal Rules of Civil Procedure are committed to the sound discretion of the trial court.   *See Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984).   Pursuant to Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."   Fed. R. Civ. P. 26(b)(1).

"The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may

be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *Oliver v. City of Orlando*, No. 6:06-cv-1671-Orl-31DAB, 2007 WL 3232227, at *2 (M.D. Fla. Oct. 31, 2007) (citing *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958)). The moving party "'bears the initial burden of proving that the information sought is relevant.'" *Douglas v. Kohl's Dep't Stores, Inc.*, No. 615CV1185ORL22TBS, 2016 WL 1637277, at *2 (M.D. Fla. Apr. 25, 2016) (quoting *Moore v. Lender Processing Servs. Inc.*, No. 3:12-CV-205-J, 2013 WL 2447948, at *2 (M.D. Fla. June 5, 2013)). "Relevancy is determined based on the 'tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action.'" *Hankinson v. R.T.G. Furniture Corp*., No. 15-81139-civ-Cohn/Seltzer, 2016 WL 1182768, at *1 (S.D. Fla. Mar. 28, 2016) (quoting *Garcia v. Padilla*, No. 2:15-cv-735-FtM-29CM, 2016 WL 881143, at *2 (M.D. Fla. Mar. 8, 2016 and Fed. R. Evid. 401)).

Proportionality requires counsel and the court to consider whether relevant information is discoverable in view of the needs of the case. In making this determination, the court is guided by the non-exclusive list of factors in Rule 26(b)(1). *Graham & Co., LLC v. Liberty Mut. Fire Ins. Co.*, No. 2:14-cv-2148-JHH, 2016 WL 1319697, at *3 (N.D. Ala. April 5, 2016). "Any application of the proportionality factors must start with the actual claims and defenses in the case, and a consideration of how and to what degree the requested discovery bears on those claims and defenses." *Id.* (quoting *Witt v. GC Servs. Ltd. P'ship*, 307 F.R.D. 554, 569 (D. Colo. 2014)).

When objecting to a discovery request, the "[p]arties are not permitted to assert . . . conclusory, boilerplate objections that fail to explain the precise grounds that make the request objectionable." *Martin v. Zale Delaware, Inc.*, No. 8:08-CV-47-T-27EAJ, 2008 WL 5255555, at *1 (M.D. Fla. Dec. 15, 2008). Indeed, an objecting party "must explain its reasoning in a specific

and particularized way" and "an objection that a discovery request is irrelevant . . . must include a specific explanation describing why."   *Id.* at *1–2.   Finally, "[o]bjections based on privilege or work product protection must be made expressly."   *Nationwide Mut. Fire Ins. Co. v. Kelt, Inc.*, No. 6:14-CV-749-ORL-41, 2015 WL 1470971, at *4 (M.D. Fla. Mar. 31, 2015) (noting that "[a] party cannot assert a privilege by saying that responsive documents might be privileged").

### B.  Protective Order

Federal Rule of Civil Procedure 26(c)(1) permits the issuance of a protective order precluding discovery "for good cause."   A court may issue such "an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" and may thus forbid the disclosure of discovery.   Fed. R. Civ. P. 26(c)(1), (c)(1)(A).

"A protective order should be entered only when the movant makes a particularized showing of 'good cause' and specific demonstration of fact by affidavit or testimony of a witness with personal knowledge, of the specific harm that would result from disclosure or loss of confidentiality; generalities, conclusory statements and unsupported contentions do not suffice." *E.E.O.C. v. v. DiMare Ruskin, Inc.*, No. 2:11-CV-158-FTM-99, 2012 WL 12067868, at *3 (M.D. Fla. Feb. 15, 2012) (citing *Gulf Oil Company v. Bernard*, 452 U.S. 89, 102 n. 16, (1981) and *Grams v. Am. Med. Instruments Holdings Long Term Disability Plan*, No. 3:08-CV-1060-J-12MCR, 2009 WL 2926844, at *5 (M.D. Fla. Sept. 14, 2009)).   In other words, "[t]his Court has held that 'the party seeking a protective order has the burden to demonstrate good cause, and must make a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements' supporting the need for a protective order."'   *Harrington v. Roundpoint Mortg. Servicing Corp.*, No. 215CV322FTM38MRM, 2016 WL 7473426, at *2 (M.D. Fla. Dec. 28, 2016)

(quoting *Auto–Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429–30 (M.D. Fla. 2005) (brackets and quotation marks omitted).

"[W]hether good cause exists for a protective order is a factual matter to be decided by the nature and character of the information in question." *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1315 (11th Cir. 2001). Lastly, "[c]ourts have broad discretion at the discovery stage to determine whether or not a protective order is appropriate and what degree of protection is required." *Harrington*, 2016 WL 7473426, at *2.

## III. DISCUSSION

As stated, there are two subpoenas at issue. Both were served by Plaintiff, one served on JB Medical, a party to this action, the other served on WestFax, a third party. But before addressing the appropriate discovery as to each individual subpoena, I will first address two issues of commonality: (1) McKesson's standing to object to the subpoenas and (2) the relevancy of products other than Medisoft and documents that would disclose information about those products (but not Medisoft). Then I will address separately the subpoenas at issue, starting with the subpoena served on JB Medical.

### A. Standing

Plaintiff challenges McKesson's standing to object to the subpoena served on JB Medical, but he does not argue that McKesson lacks standing to object to the WestFax subpoena. (*See* Docs. 61; 69 at 4–7). For the sake of completeness, I will address standing as to both.

McKesson seeks to limit both subpoenas under Rule 26 on relevancy grounds. (Docs. 59 at 7; 68 at 6–7). Rule 26 "gives a party standing to challenge discovery requests, including nonparty subpoenas, if the requests seek information that is not relevant." *Skyline Steel, LLC v. J.D. Fields & Co., Inc.*, No. 615CV528ORL41KRS, 2015 WL 13358183, at *2 (M.D. Fla. Nov.

24, 2015); *JWD Auto., Inc. v. DJM Advisory Grp. LLC*, 317 F.R.D. 587, 588–89 (M.D. Fla. 2016) ("[T]he Court finds that [the defendants] may properly interpose objections on relevance and proportionality grounds to the discovery Plaintiff seeks to obtain from [the nonparty] by subpoena."); *Auto-Owners Ins. Co.*, 231 F.R.D. at 429 ("As parties, Defendants clearly have standing to move for a protective order if the subpoenas seek irrelevant information.").   Indeed, under Rule 26(c) "[a] party may seek a protective order to prevent discovery that results in 'annoyance, embarrassment, oppression, or undue burden or expense.'"   *Cafra v. RLI Ins. Co.*, No. 8:14-CV-843-T-17EAJ, 2015 WL 12844288, at *1 (M.D. Fla. Feb. 5, 2015) (quoting Fed. R. Civ. P. 26(c)(1)) (brackets and citation omitted).

McKesson seeks here to protect JB Medical (a party who has neither appeared nor responded to the subpoena against it), WestFax (a third party), and presumably itself from the annoyance, oppression, undue burden, and expense of what it considers to be irrelevant discovery sought in the subpoenas.   Accordingly, to the extent McKesson seeks to protect parties and third parties from discovery it contends is irrelevant, I submit that McKesson has standing to challenge such discovery under Rule 26.[8]

---

[8] It is Plaintiff, of course, who served the two subpoenas at issue, including the subpoena to JB Medical and the accompanying motion to comply with that subpoena, which is in essence a motion to compel document production.   In any event, the relevancy analysis set forth below is surely equally applicable to both subpoenas, the appropriate scope of discovery generally, and, in turn, compelling JB Medical to produce documents.   McKesson also argues that it has standing under Rule 45 (Doc. 68 at 6–7) to object to the JB Medical subpoena, but the Court need not reach this argument.   *See, e.g.*, *Baptiste v. Centers, Inc.*, No. 5:13-CV-71-OC-22PRL, 2013 WL 3196758, at *2 (M.D. Fla. June 21, 2013) ("The Court, however, need not decide whether Plaintiff has standing under Rule 45 [to challenge the subpoenas at issue] because she clearly has standing under Rule 26 to seek a protective order.").

### B. Relevancy

"[I]t is well settled that the scope of discovery under a subpoena issued pursuant to Rule 45, Federal Rules of Civil Procedure, is the same as the scope of discovery under Rule 26, Federal Rules of Civil Procedure." *Cadle v. GEICO Gen. Ins. Co.*, No. 613CV1591ORL31GJK, 2014 WL 12639859, at *3 (M.D. Fla. Aug. 29, 2014).   Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."   "Relevancy is determined based on the 'tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action.'" *Hankinson*, 2016 WL 1182768, at *1 (quoting *Garcia*, 2016 WL 881143, at *2 and Fed. R. Evid. 401).

The alleged TCPA-violating fax (received in October 2012) at issue here, in part, advertised "*McKesson's Medisoft* product;" "the commercial availability and quality of the *Medisoft* software by describing its 'New Features;'" "*Medisoft* version 18 as a way to 'Work Smarter, Not Harder;'" "*JB Medical's* sales and support of *Medisoft*;" and it did "not include the mandatory opt-out notice required by the TCPA."   (Doc. 1 at ¶¶24, 26, 27, 28, 32) (emphasis added).   The class claim currently at issue here, in turn, alleges that Defendants violated the TCPA with "facsimiles from *JB Medical* at any time after September 29, 2012, about '*Medisoft*' and which did not state that the fax recipient could request that the sender not send any future fax and that the failure to comply with such a request within 30 days would be unlawful."   (Doc. 1 at ¶36) (emphasis added).   The complaint also recites that Plaintiff believes "Defendants' fax advertising campaigns involved other, substantially-similar advertisements also sent without the opt-out notice required by the TCPA" and that "Plaintiff intends to locate those advertisements in discovery," but the fax Plaintiff received (and appears to form the basis of his claim, as well as the proposed class

definition), relates to "*McKesson's Medisoft* product" and "*JB Medical's* sales and support of *Medisoft*."   (Doc. 1 at ¶¶24, 28, 38, and at p.23).

The above-quoted proposed class definition—in conjunction with the contents of the underlying October 2012 fax that advertises Medisoft—thus defines the relevancy scope directly and concisely: faxes sent by JB Medical after September 29, 2012 about Medisoft (and without, of course, the op-out notice).   This issue seems clear.   While Plaintiff presents several contextual arguments on why the issue is not straightforward, as explained below, these arguments are unpersuasive.

Plaintiff first asserts that the scope and contour of the proposed class is not static.   (Docs. 61 at 6–8; 69 at 9).   Undeniably, a class definition may evolve over the life of a case.   *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000) ("[T]he scope and contour of a class may change radically as discovery progresses and more information is gathered about the nature of the putative class members' claims.").   But here, not only has Plaintiff failed to move to amend (and essentially expand) the definition proposed for the purported class in the complaint at this time, he has presented no evidence that JB Medical has sent faxes advertising products other than Medisoft—nor has he even mentioned by name what other products may be at issue.

Plaintiff has, instead, presented several other purported faxes—in addition to the original October 2012 fax that underlies this case—that he received that advertise Medisoft and that reference JB Medical.   (Doc. 61-1).   Yet (I note again) Plaintiff fails to point to any of these faxes to show that other products were advertised via facsimile by JB Medical, or, importantly, that he received such a fax and has a claim for relief arising from it.   Absent any indicia of what other products may be at issue here, Plaintiff's current complaint sets the scope of what is relevant: faxes sent by JB Medical about Medisoft.

- 14 -

Plaintiff also asserts that the "focus" of his class action allegations "is JB Medical's fax broadcasting activity on behalf of McKesson, not the specific McKesson product or service advertised on JB Medical's faxes" and, accordingly, "[r]equests relating to JB Medical products or services other than 'Medisoft' are not overbroad because Plaintiff has not limited his Class claims to 'Medisoft' faxes."   (Docs. 61 at 2–3; 69 at 8).  To support this, Plaintiff points to several paragraphs of his complaint that state his intention to "'discover the number of other Defendants' advertisements sent to Plaintiff by fax;'" "'Defendants' fax advertising campaigns involved other, substantially similar advertisements . . . . Plaintiff intends to locate those advertisements in discovery;'" "'whether Defendants sent facsimiles promoting the commercial availability or quality of property, goods, or services' and 'whether . . . other yet-to-be-discovered facsimiles sent by or on behalf of Defendants, advertised the commercial availability or quality of property, goods or services' [are] common questions of law and fact at issue in this case."   (Doc. 1 at ¶¶23, 38, 41(a–b); 61 at 3).

Although these allegations may be broader than the proposed class definition, they all fail, under the circumstances, to justify discovery into facsimile advertisements of other products at this time.   As to other faxes that Plaintiff may have received from JB Medical, he has already brought to the Court several allegedly sent by JB Medical (Doc. 61-1); yet he utilizes none of those to show what other products are at issue.   And as to advertisements substantially similar to the fax Plaintiff received and "facsimiles promoting the commercial availability or quality of property, goods, or services," though these allegations may allow for some wiggle room in the relevancy analysis, again, Plaintiff has taken no steps to explain how or even what other products are or would be "substantially-similar" enough to Medisoft to count.

Plaintiff also notes the Court's prior order denying transfer and states: "The only fundamental limitation in Plaintiff's Complaint, and the only limitation upon which the Middle District of Florida court relied in denying McKesson's motion to transfer . . . , is that Plaintiff's individual and Class claims are limited to unsolicited fax advertisements by or from JB Medical." (Doc. 69 at 8, 9–10; *see also* Doc. 61 at 8–9).   Plaintiff concludes that "[t]he particular product or service unlawfully marketed by JB Medical via facsimile is irrelevant if JB Medical indeed caused the faxes to be transmitted."   (Docs. 69 at 8, 9–10; 61 at 9).   Essentially, Plaintiff asks the Court to ignore the relationship between JB Medical and Medisoft, as set forth in the Complaint, and allow it to discover *any and all* faxes sent by JB Medical, whether about Medisoft or not, and (notably) whether sent to Plaintiff or not.   There is no (current) basis to expand the scope of discovery to faxes about products that Plaintiff didn't receive.   Further, the argument that the Court should separate JB Medical from the Medisoft fax is unpersuasive for at least two reasons.

First, without evidence that JB Medical even advertised products other than Medisoft, the Court cannot say that the "about Medisoft" element is any less a fundamental limitation than the "sent by JB Medical" element.   Second, though the Court certainly made the distinction, in denying transfer, that "the Northern District of California case involves faxes sent from McKesson . . . , whereas the faxes here were sent by JB Medical" (Doc. 39 at 6), Plaintiff points to no evidence in the Court's order denying transfer that products other than Medisoft are relevant here.

In sum, there is no basis to conclude that faxes advertising products other than Medisoft are relevant here, where Plaintiff does not even say what products they might be or that he received faxes about them.   So, as to further discovery into facsimiles and other documents, and for purposes of the current motions before the Court, such discovery should be limited to faxes that are about (or advertise) the product Medisoft.

- 16 -

The above conclusion resolves, at the most basic level, the underlying relevancy dispute at the heart of the three motions before the Court: whether faxes (or other information) that advertise products other than Medisoft are currently relevant to the claims pending here.

Finally, I note Plaintiff's assertion that McKesson has failed, under Rule 26(c), to carry its burden, as to its two motions for protective orders, of making a good faith showing of annoyance, embarrassment, oppression, or undue burden or expense.   (Doc. 61 at 9–10 (stating that McKesson has simply failed to state what annoyance, embarrassment, oppression, or undue burden or expense it or WestFax will suffer if WestFax complies with the subpoena against it in full); 69 at 5–6 ("[I]t is literally impossible for JB Medical's compliance with Plaintiff's subpoena to cause McKesson any oppression, undue burden or expense at all, because McKesson is not being called upon to do anything at all in response to that subpoena, let alone something prohibitively oppressive, burdensome or expensive.").   Based on the relevancy analysis above, I disagree.

By way of example, McKesson sufficiently explains that by requesting discovery related to additional McKesson products from WestFax, Plaintiff also "intends to pursue speculative, expansive discovery from McKesson as well, resulting in undue discovery burdens premised on discovery that is not related to any properly pled claims" (Doc. 59 at 12); and as to the JB Medical subpoena, McKesson states that Plaintiff seeks "the production of documents concerning any and all McKesson products other than Medisoft" and "without any limitations, virtually all documents 'relating or referring' to McKesson" (Doc. 68 at 3).   Further, when a subpoena is overbroad and is not tailored to the issues in the case, the Court shall protect any party subject to the subpoena from such undue burden and expense.   *Cadle v. GEICO Gen. Ins. Co.*, No. 613CV1591ORL31GJK, 2014 WL 12621189, at *2 (M.D. Fla. May 28, 2014) ("While the scope of discovery is broad, Rule 45, Federal Rules of Civil Procedure, provides that a court must protect

any party subject to a subpoena from undue burden or expense.").   Similarly, if "compliance with a subpoena creates an undue burden, Rule 45, Federal Rules of Civil Procedure, provides that a court must quash or modify the subpoena."   *Id*; Fed. R. Civ. P. 45(d)(3)(A)(iv).

### C.  The JB Medical Subpoena

#### 1. The undisputed requests

There are a large number of document requests contained in the JB Medical subpoena that are simply not in dispute here.   These are Requests 1–8, 14, 21–35, and 38–51.   (Doc. 69 at 3–4).   Accordingly, Plaintiff's motion (Doc. 67) will certainly be granted to this extent and JB Medical will be ordered to comply with these requests.   Notably, there is evidence in the record that JB Medical is not only on notice of this subpoena but is awaiting a court order to comply. (*See* Doc. 69 at 20).

As JB Medical has not appeared in this case, Plaintiff is responsible for assuring that this order is properly served on JB Medical **within ten days** of entry of this order and Plaintiff shall notify the Court of such service once accomplished.   Once JB Medical has been served with this order, it will have **fourteen days** to comply.

#### 2. The disputed requests

As to the disputed requests, and for the reason stated in *supra* section III.B, Requests 9–13, and 16–20—requests that seek information related to JB Medical's relationship with

- 18 -

McKesson—should be limited to only documents relevant to the Medisoft product.[9]   Likewise,

Requests 36 and 37 should be limited to only faxes and documents about Medisoft.[10]

Lastly, Request 15 is simply too broad at this time as it seeks, and only seeks, information

about McKesson's other products, products other than Medisoft: "Each document identifying,

referring, or relating to McKesson owned products, *other than medisoft*, that JB Medical sold or

distributed from September 30, 2012 to the present."   (Doc. 67 at 34) (emphasis added).   And as

stated above, without knowledge of what other products could be at issue, the Court cannot say

that such unknown products are relevant here.

---

[9] These requests seek the following information:
   9. Each document referring or relating to McKesson.
   10. Each document identifying, referring, or relating to any relationship between JB Medical and McKesson.
   11. All invoices exchanged between JB Medical and McKesson (whether hard copy, electronic or otherwise).
   13. All communications exchanged between JB Medical and McKesson (whether hard copy, electronic or otherwise).
   16. Each document identifying, referring, or relating to JB Medical's relationship with McKesson Technologies, Inc.
   17. Each document identifying, referring, or relating to JB Medical's relationship with McKesson Pharmacy Systems.
   18. Each document identifying, referring, or relating to JB Medical's relationship with McKesson Business Performance Services.
   19. Each document identifying, referring, or relating to JB Medical's relationship with McKesson Pharmacy Systems and Automation.
   20. Each document referring or relating to JB Medical's relationship with McKesson Specialty Health.

(Doc. 67 at 33–34).
[10] These requests seek the following information:
   36. Each document relating to the creation of any fax advertisement, other than the subject fax that identified JB Medical and medisoft on it, as alleged in the Complaint.
   37. Each document relating to JB Medical sending fax advertisements, not including the subject fax, or any other fax identifying JB Medical and medisoft, to recipients since September 30, 2016.

(Doc. 67 at 35).

Accordingly, Plaintiff's motion (Doc. 67) to compel JB Medical to comply with its subpoena is granted to the extent set forth above.  And McKesson's motion (Doc. 68) for a protective order is likewise granted to the extent set forth above.

### D.  The WestFax Subpoena

Since WestFax (a third party) has already made a production, what remains at issue is whether WestFax, should be protected from producing additional invoice summaries, invoice summaries that do not contain the word "Medisoft" in the item description (and other documents that are relevant to products other than Medisoft).   (Doc. 59).   McKesson asserts both relevancy and proportionality objections to the subpoena served by Plaintiff.   Both objections have merit.

### 1.  Relevancy

McKesson argues that by pursuing further production of discovery from WestFax that is not expressly limited to fax advertisements of Medisoft (i.e., seeking JB Medical invoices that do not contain the word "Medisoft" in the item descriptions), Plaintiff seeks irrelevant information. Generally, McKesson's argument is well taken, but to the extent evidence establishes a need for a broader production, and a proportionality analysis justifies it (as may occur as discovery progresses), Plaintiff may have a basis to obtain a broader production from WestFax later in the case.

As stated above, for purposes of the current dispute before the Court, Plaintiff's claim and the proposed class definition defines the relevancy scope concisely: faxes about the product Medisoft sent by JB Medical.   Thus, documents that WestFax may have that are associated with faxes that are not "about Medisoft" are not currently relevant here, and need not be produced at this time.   With the exception of one argument (a potential exception), which I will address now, Plaintiff's arguments against this conclusion have already been addressed above.

Plaintiff argues that there is not a direct, reliable connection between the item descriptions in the summary invoices provided by WestFax and content of the pertinent faxes.   (Doc. 61 at 5–6).   Indeed, as noted above, Plaintiff received a fax on January 9, 2013 that referenced both Medisoft and JB Medical (but not McKesson).   (Doc. 61-1 at 4–5).   Plaintiff also has a WestFax summary invoice showing JB Medical paid WestFax to broadcast thousands of faxes on that same day, but that summary invoice lacks any mention of Medisoft.   (Doc. 61-2 at 2).   Further, WestFax appears to admit that it does not know the content of the faxes it sends.[11]   (Doc. 61-7 at 1).

Based on this evidence, the Court submits that Plaintiff has shown that JB Medical summary invoices (and perhaps other documents) held by WestFax during the time period at issue *may* be relevant to his claims regardless of whether the item descriptions in such invoices mention the word "Medisoft."   With that said, whether these summary invoices (and other documents perhaps held by WestFax) are properly discoverable at the present moment also turns on whether such discovery is proportional at this time.

### 2. *Proportionality*

McKesson contends that this additional discovery from WestFax is not due, as Plaintiff "still need[s] discovery from JB Medical—a party to this litigation—concerning the faxes that JB Medical sent about Medisoft to determine whether the information [Plaintiff] seeks from [third parties like WestFax] is even relevant."   (Doc. 59 at 10).   This is persuasive.

---

[11] Plaintiff also asserts that he has received other faxes from JB Medical about Medisoft that lack accompanying summary invoices from WestFax (Docs. 61 at 3–6; 61-1).   Yet it seems that the parties have resolved their discovery dispute as to the additional faxes that Plaintiff received.   (Doc. 70).   But that notice also makes clear that "McKesson continues to seek a protective order to properly tailor the discovery in this case to only documents within the scope of discoverable information."   (Doc. 70 at 3–4).

Since the production of information about thousands of potentially irrelevant faxes and invoices from third party WestFax could be avoided based on a more concise request that is informed by information JB Medical holds, the very company who sent or ordered the fax (or faxes) at issue, the production of JB Medical's records should at least occur first.   For instance, Plaintiff seeks any invoices that JB Medical may have that it received from third parties like WestFax.   (Doc. 67 at 36, Request 42) ("Each invoice, . . . setting forth or identifying the number, date, charge, credit, offset, or amount owed or paid to any third person, for the creation or transmission by facsimile of the subject fax, or any other fax identifying JB Medical and medisoft, as alleged in the Complaint.").   Such discovery may moot further discovery from WestFax or may better define the scope of a future, more limited request.   Notably, Plaintiff's request for an order directing JB Medical to respond to Request 42, among other requests, was granted above.

Thus McKesson's motion (Doc. 59) for a protective order is due to be granted at this time but shouldn't affect any stipulations that the parties have otherwise agreed to (see Doc. 70). Plaintiff is free to move to dissolve this protection once JB Medical has responded to the subpoena against it (and after Plaintiff has sufficiently reviewed documents produced by JB Medical, if any), if Plaintiff then has further need for documents from WestFax and can show such need in an appropriate motion.

IV.   **CONCLUSION**

Accordingly, and upon due consideration, it is **ORDERED** that:

1) McKesson's motion (Doc. 59) for a protective order as to the subpoena served on WestFax is **GRANTED.**   This protective order is subject Plaintiff's ability to request dissolution of it, if appropriate.

2) Plaintiff's motion (Doc. 67) to compel JB Medical to comply with Plaintiff's subpoena is **GRANTED** to the extent set forth above.

3) McKesson's motion (Doc. 68) for a protective order as to the subpoena served on JB Medical is **GRANTED** to the extent set forth above.

4) Given the good faith arguments before the Court, it is appropriate at this time for the parties to bear their own fees and costs associated with the motions at issue.

**DONE** and **ORDERED** in Ocala, Florida on July 18, 2017.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties